DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANDREW CARDARELLI,**
Appellant,

v.

**TRACY CARDARELLI** n/k/a **TRACY FORGERON,**
Appellee.

No. 4D21-1328

[November 23, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Renatha Francis, Judge; L.T. Case No. 502014DR0007319.

Robert S. Winess of Robert S. Winess, P.A., Boca Raton, for appellant.

Tracy Cardarelli (n/k/a Tracy Forgeron), Boynton Beach, pro se.

GROSS, J.

The question presented in this case is whether the former wife is entitled to a qualified domestic relations order ("QDRO") providing for an increase in her distributions from the former husband's Florida Retirement System ("FRS") pension based upon her proportionate share of any cost-of-living adjustment ("COLA") received by the former husband. We hold that the former wife's right to a COLA was a vested statutory right that accrued during the marriage, so the QDRO properly included COLAs. Therefore, we affirm.

The parties married in 1999, and the former husband filed for dissolution of marriage in 2014. In 2015, the trial court entered a final judgment of dissolution that contained these provisions pertaining to the equitable distribution of the former husband's pension with the Florida Retirement System:

> 8. The Court has considered all of the factors and requirements of Section 61.075, Fla. Stat., ***and in accordance therewith the Court hereby equitably (equally) distributes the marital estate to the parties which equal division is reflected in the Equitable***

> ***Distribution Schedule attached hereto as Exhibit "B"***.
> The Equitable Distribution Schedule is incorporated herein by
> reference and the parties are directed to comply with the
> division and distribution of the assets and liabilities provided
> therein.
>
> \* \* \*
>
> 10. With regard to the parties retirement plans (including, but
> not limited to, ***the Husband's Florida State Retirement
> Plan/Pension***), with regard to the Qualified Domestic
> Relations Orders (QDRO's) or similar orders ***required to
> effectuate the equal division and distribution of those***,
> the parties shall attempt to agree upon a QDRO expert to
> prepare all such QDRO's or similar orders . . . The Court
> specifically reserves jurisdiction to enter, address and enforce
> any and all QDRO's or similar orders that may be necessary
> or appropriate to effectuate the required transfers.

(Emphasis supplied).

The equitable distribution schedule attached to the final judgment as Exhibit "B" stated that the FRS plan was "[t]o be divided by QDRO."

In a post-dissolution proceeding, the trial court entered an Amended QDRO that awarded the former wife, as a deduction from each monthly benefit payment payable to the former husband from the pension plan, 50% of the benefits that accrued from the date the parties were married in 1999 through the date the dissolution petition was filed in 2014.

Paragraph 9 of the Amended QDRO provides for a cost-of-living adjustment to the former wife on her proportionate share of any COLA received by the former husband:

> 9. **Cost of Living Adjustment**: The Plan Administrator shall
> increase the amount payable each month to the Alternate
> Payee based upon the Alternate Payee's proportionate share
> of any cost of living adjustments (COLA) received by the
> Participant. . . .

The former husband preserved his objection to Paragraph 9 in the trial court.

2

The former husband now appeals the Amended QDRO, arguing that the final judgment of dissolution did not mention the existence of a COLA as a marital asset subject to distribution, so the Amended QDRO should not have included Paragraph 9.

***Discussion***

Section 61.075, Florida Statutes (2015) provides for equitable distribution of marital assets and liabilities. Subsection (3) of that statute requires specific findings identifying marital assets and their value.

In *Diffenderfer v. Diffenderfer*, 491 So. 2d 265, 270 (Fla. 1986), the Florida Supreme Court held that "a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property."

Following *Diffenderfer*, the legislature enacted section 61.076, Florida Statutes, which governs the distribution of retirement plans upon dissolution of marriage. *See* Ch. 88-98, Laws of Fla. (1988).

Section 61.076(1), Florida Statutes (2015), provides: "All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution."

We conclude that the former wife's share of a COLA benefit attributable to the portion of an FRS pension earned during the marriage falls within the scope of "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement . . . plans." *Id.* To the extent that the years of service occurred during the marriage, an FRS member's entitlement to a COLA is a benefit or right that "accrued during the marriage" and is thus a "marital asset" as a matter of law, even if the actual COLA is paid after the dissolution.

In a related context, both this court and the First District have held that a spouse who is awarded a portion of the other spouse's FRS pension at the time of the dissolution judgment is entitled to an equivalent share in a Deferred Retirement Option Program ("DROP") account, including interest and COLAs, even when the DROP account is created after the dissolution became final. *See, e.g., Russell v. Russell*, 922 So. 2d 1097, 1099 (Fla. 4th DCA 2006); *Swanson v. Swanson*, 869 So. 2d 735, 738 (Fla. 4th DCA 2004); *Arnold v. Arnold*, 967 So. 2d 392, 393 (Fla. 1st DCA 2007); *Pullo v. Pullo*, 926 So. 2d 448, 451 (Fla. 1st DCA 2006). As the First District

has explained, "benefits giving rise to rights in a DROP account could 'accrue[ ] during the marriage,' within the meaning of the statute, and therefore constitute marital assets, even though funds were not deposited in the DROP account until later." *Arnold*, 967 So. 2d at 393.

Once a dissolution judgment is entered, "marital property rights no longer exist[] and only individual property rights remain." *Ganzel v. Ganzel*, 770 So. 2d 304, 306 (Fla. 4th DCA 2000). Therefore, in *Ganzel*, we held that once the judgment of dissolution was entered, the former wife's share of the former husband's FRS retirement benefits payable each month into the interest-bearing DROP account was the former wife's individual property. *Id.*

Similarly, in *Swanson*, even though the former husband did not become a DROP participant until 1998, we held that "45% of the value of the former Husband's pension benefits as of January 17, 1990 [the date of the dissolution judgment] belongs to the former Wife" and thus "the interest and cost of living adjustments which were applied to the former Wife's share, despite being in the former Husband's DROP account, should also belong to the former Wife." 869 So. 2d at 736, 738.

The reasoning of the DROP line of cases indicates that the right to a future COLA benefit attributable to the marital portion of an FRS pension is a right that accrues during the marriage. That reasoning is equally applicable here. After all, DROP is essentially a "virtual" retirement where the monthly pension benefit is paid into a DROP account while the recipient continues to work for the state, so if the non-participant spouse's share of the DROP benefit includes COLAs, it follows that the non-participant spouse's share of the ordinary monthly pension benefit should also include COLAs.

Once a court enters a dissolution judgment equitably distributing an FRS pension, the non-participating spouse's share of the pension benefit—including any future COLAs attributable to that share—is the non-participating spouse's individual property. Here, the former wife received an undivided individual property right in the former husband's FRS pension that, under the dissolution judgment, entitles her to a pro-rata share of any COLAs on the pension payments. *See Pullo*, 926 So. 2d at 451 (holding that "the former wife received an undivided individual property right in the former husband's retirement account that, under the dissolution judgment, entitles her to a pro-rata share of his DROP fund," including COLAs).

4

That the former wife's right to a COLA benefit in an FRS pension vested during the marriage is consistent with the statutes governing the FRS pension.

The rights of members of the FRS "are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way." § 121.011(3)(d), Fla. Stat. (2015). This statute "vests all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits prospectively." *Fla. Sheriffs Ass'n v. Dep't of Admin., Div. of Ret.*, 408 So. 2d 1033, 1037 (Fla. 1981).

Section 121.101, Florida Statutes (2015), governs cost-of-living adjustments under the FRS. For members whose effective retirement date is on or after July 1, 2011, the COLA is a benefit calculated based on service credit earned *before* July 1, 2011:

> (4) For members whose effective retirement date is on or after July 1, 2011, the benefit of each retiree and annuitant shall be adjusted annually on July 1 as follows:
>
> (a) For those retirees and annuitants who have never received a cost-of-living adjustment under this subsection, the amount of the monthly benefit payable for the 12-month period commencing on the adjustment date shall be the amount of the member's initial benefit plus an amount equal to a percentage of the member's initial benefit. This percentage is derived by dividing the number of months the member has received an initial benefit by 12, and multiplying the result by the factor calculated pursuant to paragraph (c).
>
> * * *
>
> (c) The department shall calculate a cost-of-living factor for each retiree and beneficiary retiring on or after July 1, 2011. This factor shall equal the product of 3 percent multiplied by the quotient of the sum of the member's service credit earned for service before July 1, 2011, divided by the sum of the member's total service credit earned.

§ 121.101(4), Fla. Stat. (2015).

The former husband's entitlement to a COLA was a vested benefit under Chapter 121 that accrued during the marriage. Under section 61.076(1), the former wife is entitled to equitable distribution of her share of the COLA benefit.

The Amended QDRO effectively awarded the former wife a proportionate share of any future COLAs attributable to the service credit earned during the marriage.

It was not necessary for the final judgment to make specific factual findings regarding the former wife's entitlement to a COLA in the pension as a marital asset subject to equitable distribution. It was sufficient that the final judgment identified the former husband's FRS pension as a marital asset and ordered an "equal division" of the asset pursuant to a QDRO. The equal division of the marital portion of the pension included each party receiving future COLAs attributable to their share of the pension.

The former husband relies on *Storey v. Storey*, 192 So. 3d 670 (Fla. 4th DCA 2016), but that case is distinguishable because the final judgment there specifically awarded the husband all future pension accumulations. There, the parties' marital settlement agreement stated: "The Petitioner/Wife is entitled to 50% of the value of the Respondent/Husband's pension benefits accumulated through November 1994. *All accumulations after November, 1994, belong to the Respondent/Husband.*" *Id.* at 671 (emphasis in original). We held that this provision unambiguously "excluded any salary and cost of living increases Former Husband received after November 1994—the date the complaint for dissolution was filed—from the Former Wife's pension benefit calculation." *Id.* at 672–73. By contrast, the final judgment in this case did not expressly exclude COLAs.[1]

*Affirmed.*

MAY and FORST, JJ., concur.

\*   \*   \*

---

[1] We also distinguish *Blaine v. Blaine*, 872 So. 2d 383, 384 (Fla. 4th DCA 2004), a case not cited by the parties. That case involved a private pension, and the opinion does not discuss the provisions of the pension relating to the accrual of the right to any COLAs. This case, in contrast, involves an FRS pension where the right to COLAs is a vested statutory right that accrued during the marriage.

*Not final until disposition of timely filed motion for rehearing.*